UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Allstate Insurance Co., | : | |
|     Plaintiff, | : | Civ. No. 3:10cv88 (SRU) |
| | : | |
| v. | : | |
| | : | |
| Radhakrishnan Nair, | : | |
|     Defendant. | : | |

RULING AND ORDER OF CONTEMPT

This case concerns the ongoing efforts of defendant, Radhakrishnan Nair, to collect monies that he mistakenly believes the plaintiff, Allstate Insurance Co. ("Allstate"), owes him. In 2002, Nair, a former exclusive agent of Allstate, sued Allstate following the termination of his agency relationship. *See Nair v. Allstate Ins. Co.,* 3:02cv717 (SRU). The parties entered into a Confidential Settlement Agreement and General Release ("settlement agreement") dated January 14, 2003, which resolved Nair's claims. As a result I dismissed the prior action with prejudice. In October 2003, Nair initiated suit against Kimberly Carmichael, a regional manager for Allstate, once again challenging his termination. *See Nair v. Carmichael*, 3:03cv1688 (SRU). I granted Carmichael's motion for summary judgment on the basis of *res judicata.* I held that the terms of the settlement agreement are enforceable and that Nair is barred from pressing any claim against Allstate related to Nair's termination. In 2005, Nair filed a notice of voluntary dismissal of his claims against Carmichael.

Since 2005, Nair has contacted Allstate over forty times demanding additional compensation for his termination and threatening to pursue charges of fraud and criminal activity if Allstate fails to meet Nair's demands. Accordingly, on January 21, 2010, Allstate filed the instant action against Nair alleging breach of contract and breach of the covenant of good faith and fair dealing. Nair counterclaimed that any judgment obtained from the 2002 action is void because the amount in controversy did not meet the federal diversity jurisdiction requirement of $75,000 and that the 2002

and 2003 actions were improperly removed to federal court and any settlement obtained is therefore unenforceable.

On September 8, 2010, I heard argument on the parties' cross motions for summary judgment. Nair did not dispute that he continued to make demands for payment from Allstate despite the terms of the settlement agreement; he maintained that he is not bound by the settlement agreement. *See* doc. # 42 at 45 (Sept. 8, 2010 Transcript). I concluded that Nair was liable to Allstate for breach of contract and granted Allstate's motion for summary judgment. Nair's motion for summary judgment was denied and judgment entered in favor of Allstate with respect to the first count of its complaint and Nair's counterclaim. *See Allstate Ins. Co. v. Nair,* 2011 WL 14611371 (2d Cir. 2011).

On September 13, 2010, I granted Allstate a permanent injunction prohibiting Nair from, among other things, making any statement -- written or oral -- for the purpose of seeking or demanding in any manner that Allstate or any of its officers, directors, employees, attorneys or agents pay Nair money allegedly owed as a result of his relationship with Allstate as an Exclusive Agent or the termination of Nair's agency relationship with Allstate. *Allstate Ins. Co. v. Nair,* 2010 WL 3719924 (D. Conn. 2010). Allstate now moves for contempt and an award of sanctions, claiming that Nair continues to demand payment from Allstate in violation of the permanent injunction. Doc. # 43. For the reasons that follow, Allstate's motion for contempt is granted.

**I.      Standard**

"A party who violates an injunction entered by the district court faces the threat of both civil and criminal contempt." *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 657 (2d Cir. 2004), <u>citing</u> *Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 604 (1951) (Reed, *J.,* concurring); *Universal City Studios, Inc. v. N.Y. Broadway Int'l Corp.,* 705 F.2d 94, 96 (2d Cir. 1983). "A court's inherent power to hold a party in

civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *New York State Nat. Organization for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir. 1989), citing *EEOC v. Local 638, Local 28 of Sheet Metal Worker's Int'l Ass'n,* 753 F.2d 1172, 1178 (2d Cir. 1985), *aff'd*, 478 U.S. 421 (1986).

## II.     Discussion

In its motion for contempt, Allstate has identified two specific instances in which it alleges that Nair has violated the permanent injunction.  The first occurred on April 25, 2011 when Nair sent an email to certain individuals at Allstate demanding $10,920,000 before the Annual Shareholder's meeting scheduled for May 17, 2011.  *See* Lian Decl. at p. 3 ("This electronic communication is to give you notice that my compulsory counterclaim in the amount of $10,920,000 is still valid . . . .").  In the April 25, 2011 email, Nair renews his argument that the federal district court lacked jurisdiction over his initial lawsuit and therefore his claim for money damages against Allstate is not settled.  *Id.* Nair demands that Allstate send him a check for the amount stated or transfer to him 345,023 whole shares of Allstate Common Stock before the Annual Shareholders' Meeting scheduled for May 17, 2011.  *Id.*  The second instance occurred on May 2, 2011, when Nair sent a second email titled "Notice and Invoice to Allstate General Counsel on Record – Michele C. Mayes" repeating his claims concerning the removal of his case to federal district court and demanding payment of $10,920,000 in cash or stock.  *Id.* at p. 4.  In the May 2, 2011 email, Nair also threatens to demand the immediate discharge of Ms. Mayes from her position as General Counsel.

Allstate filed a supplemental memorandum in support of its motion for contempt notifying the court that Nair has made a third demand for payment in violation of the permanent injunction.  On Monday, May 9, 2011, Nair sent via email a "Notice and Invoice to Counsel on Record for Allstate

Corporation, Wystan Ackerman" demanding that Wystan Ackerman personally "settle this debt" of $10,920,000 with Nair by June 9, 2011.  *See* Ackerman Decl. at p. 3.

In light of Allstate's request for an expedited motion hearing (doc. # 44), I scheduled a hearing on the motion for contempt on May 12, 2011.  On May 10, 2011 and May 11, 2011, phone messages were left at Nair's home phone number providing him notice of the hearing, date and time.  Nair conveyed to the court that he was not going to attend the hearing and that he would be submitting a response.  On May 11, 2011, Nair faxed to the court his objection to the court's jurisdiction over Allstate's motion for contempt and stated that he would not be participating in the scheduled hearing.  Doc. # 48.  Nair also stated that he "will not be bound by any decisions [the court] make[s] at this planned hearing."  *Id.*  Before turning to the merits of Allstate's motion, I must first address Nair's challenge to the court's jurisdiction to consider Allstate's motion and to enforce the terms of the permanent injunction.

    A.    *Jurisdiction*

The Supreme Court has long recognized that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution."  *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34 (1812).  "The most prominent of these is the contempt sanction, which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court."  *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, (1980).  "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Shillitani v. United States,* 384 U.S. 364, 370 (1966), citing *United States v. United Mine Workers*, 330 U.S. 258, 330-332 (1947); *see also Cintron v. Vaughn*, 2007 WL 4240856 (D. Conn. 2007) .  Nair has not cited any authority for the proposition that the permanent injunction is not lawful and therefore not binding on him.  Nair's jurisdictional argument centers solely on his

contention that the 2002 action against Allstate was improperly removed. That claim has already been considered and rejected by the court. *Nair v. Carmichael*, 2004 WL 2381557 (D. Conn. 2004). Accordingly, I conclude that I have jurisdiction to consider Allstate's motion for contempt and to enforce the permanent injunction.

    B.    *Civil Contempt*

Nair's three emails to Allstate easily satisfy the elements of civil contempt. First, the terms of the permanent injunction are clear and unambiguous. The plain language of the permanent injunction provides that Nair is permanently enjoined from seeking, demanding, or otherwise requesting in any manner – written or oral – that Allstate or any of its officers, directors, employees, attorneys or agents pay Nair money allegedly owed as a result of his relationship with Allstate as an Exclusive Agent or the termination of Nair's agency relationship with Allstate. Second, the proof of noncompliance is clear and convincing. *See* Lian Decl. at p.3, and Ackerman Decl. at p. 3. Indeed, Nair has not denied that he made the cited demands. Furthermore, the evidence demonstrates that Nair has not diligently attempted in a reasonable manner to comply with the terms of the permanent injunction.

    C.  *Sanctions*

A civil contempt sanction may serve either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance. *See United Mine Workers of America,* 330 U.S. at 303-04. When imposing coercive sanctions, a court should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden. *Dole Fresh Fruit Co. v. United Banana Co.,* 821 F.2d 106, 110 (2d Cir. 1987). The ultimate consideration is whether the coercive sanction -- here, a fine -- is reasonable in relation to the facts. *Terry*, 886 F.2d at

1352 -1353.

Nair has demonstrated a flagrant disregard for the terms of the permanent injunction and his communication to the court indicates that Nair is likely to continue to press Allstate and its counsel to "settle the balance of [his] claim long overdue." Doc. # 48.  The nature and character of Nair's requests are forceful, at times threatening, and are a continuation of a years' long period of harassment waged against Allstate and its counsel in this matter.  Additionally, despite being cautioned by the court about the penalty for failing to comply with the terms of the permanent injunction, it appears that the threat of monetary sanctions did not dissuade Nair.  Doc. # 42 at pp. 37-8.  Nair did not reply to Allstate's motion and has offered no evidence of an inability to pay a fine.  I conclude that character and magnitude of the harm threatened by Nair's continued demands warrants the imposition of a coercive sanction.[1]

### III.     Conclusion

In light of the foregoing, I find that Nair has willfully violated the permanent injunction on three occasions – April 25, 2011; May 2, 2011; and May 9, 2011.  Allstate's motion for contempt is granted and it is hereby ordered that the following sanctions be imposed on Nair to coerce his compliance with the permanent injunction.  Accordingly, Nair shall pay an escalating sanction, payable to the Clerk of the Court, for each future violation of the permanent injunction.  For the first violation,

---

[1] Allstate has requested an award of compensatory sanctions with respect to Nair's violation of the permanent injunction and an award of damages on its breach of contract claim.  Doc. # 43-1 at pp. 12 – 15.  In *United Mine Workers,* the Supreme Court acknowledged that civil contempt sanctions could be imposed "to compensate the complainant for losses sustained," based upon evidence of such loss or injury.  330 U.S. at 303-04.  During the May 12, 2011 hearing I instructed Allstate to submit evidence of its loss or injury associated with Nair's failure to comply with the permanent injunction.  An award of compensatory sanctions will be addressed in a separate order.  With respect to Allstate's damages associated with Nair's breach of the settlement agreement, I reserved awarding Allstate those damages contingent upon Nair's compliance with the permanent injunction.  *See* docs. ## 42 and 37.  In light of the fact that Nair has violated the permanent injunction, Allstate may move to reopen its claim for damages arising out of Nair's breach of the settlement agreement.

a sanction of $500 will be imposed. Each violation thereafter shall increase by $250 to a maximum sanction of $2,500 for each violation.

To the extent that Allstate's motion for contempt seeks to bar Nair from attending the Allstate Shareholder's Meeting scheduled for May 17, 2011, the motion is denied. However, should Nair make any statement at the meeting that violates the permanent injunction, a sanction as set forth above will be imposed.

So ordered.

Dated at Bridgeport, Connecticut this 13th day of May 2011.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge